Sure, your honor. Brian Connery on behalf of Celedonio Silva-Olayo, your honors. May it please the court. I believe the most important thing on this case is the IQ of this person. He's 70 IQ, 65 to 71. And he's incompetent to proceed, or at the very least, that needs to be recognized and dealt with under safeguards through the immigration judge. It wasn't that nobody there realized that there was this problem. And the problem's not contested in any way by anyone. So what would be done differently if we were to go back and what would happen? We would first have a hearing on whether he was, in fact, incompetent? Yes, your honor. I believe everything would change. No, I want to know exactly what would happen. Would there first be a hearing on whether he was incompetent? Yes. I think there'd be further psychological exam on him to see exactly where he is. And any information that was received in the process would go to both his asylum application and his cancellation application. We have a brief evaluation of him that was reached and submitted on a motion to reopen. But everything would have been developed further. Everything would have changed. Well, that's, I'm sorry, go ahead. Assuming that he was found to be incompetent, then what would happen? If he is found to be incompetent and we are under safeguards, then the record would be developed differently. But that's the question, because the ground of decision was that there was no extreme and unusual hardship to the children. So it's not a case in which his own, let's say, asylum claim for persecution or something is at issue. And that's where I have some difficulty for two reasons. One is we don't have jurisdiction to review directly a decision saying that there is no extreme and unusual hardship. And the other is that since it's about someone else, I'm not sure what would be developed differently. OK, I'll try to help, Your Honor. First is to the motion to reopen, I believe the court can discuss the need for a cancellation application as part of the motion to reopen filing, but not on the direct appeal. So I think that's where the court can consider it. As to the hardship to the children, I know I've seen cases that say hardship to the parent is also hardship to the children. I don't think that's it, but my understanding is that one criteria was perhaps that there would be a hardship to the children if this individual would not be able to support them. Thank you. And I would agree with that. It surely would be a lot more difficult to make a living down there in Mexico at the age of 40, where you don't have any contacts with employers down there. And that's developed by Dr. Borman's submission on the motion to reopen, which the Board of Immigration Appeals also didn't discuss whatsoever. I think the motion, the decision- It was sort of out of place. I don't know whether this doctor is an expert on what's happening in Mexico. Well, Your Honor, I think if it was reopened, it would certainly be more developed as to why he actually is an expert. He testifies routinely in the immigration courts. I don't know how far I can go on that to respond to the court. Well, he's an expert. I thought he was a psychologist. He's also a psychologist, Your Honor. There's two experts who have submitted- Oh, I see, it's a different person. One is the psychologist. But as to the relevance of the mental disability to the cancellation, the only possible relevance is that it might demonstrate that it would be harder for him to just revive economically in Mexico. I don't think that's the only issue, Your Honor. I think there's also the issue of violence in Mexico and the issue that- I know, but that doesn't have anything to do with the mental disability, does it? But it does, Your Honor. It's going to be more difficult for the petitioner to be able to gain employment and also to be safe. He's going to be targeted by the cartels in Mexico because he's from America in the first place. And the particular social group that is mentioned isn't a particular social group within Delgado. If I had it to do over again and I was going to go into court, the particular social group would be intellectually disabled, former long-term resident of the United States. And we'd start talking about the torture convention because people who need help in Mexico, and he wouldn't have his wife to help him do anything like paperwork. He probably couldn't even get his papers in Mexico, which certainly would make things very difficult for him. Let me just try to understand this. Unlike a criminal case, if he is found incompetent, the hearing still will go forward, but there would be some safeguards that would be followed. Is that correct? Criminal case, Your Honor? No, if they don't like a criminal case, in this particular case, there will be some safeguards that will be instituted. At the very least. And I also know that you're having to- Well, is that correct or not? Well, it's partially correct. OK, tell me what would happen that would be different from what happened before. That's what I'm trying to find out. If we go through the exercise and you prevail and he is found to be incompetent, then what would happen next? The proceedings could potentially be terminated, Your Honor, if he's found incompetent and he remains incompetent upon further scrutiny of whether or not he can actually understand what's going on. You know, his testimony was just incredible. He doesn't know the age of his own children. He doesn't know where he was employed or for how long. He doesn't know when he entered the United States. He's not going to have a lack of credibility finding. And I think that does affect the court. If somebody is in front of the court and doesn't lack credibility, the court's not digging it. The court's not sympathetic to an individual who is in that kind of posture before the court. But also, I gather another strain of this is that there was no asylum application or a CAT application. Yes, Your Honor. The asylum application seems like an uphill battle no matter what. It is uphill, Your Honor. It is uphill, but it still would have been filed and would have been developed and would have been a different filing. And he has the right to make that filing. He had a lawyer, so why would it have been different? Well, his lawyer didn't know about the mental health. I know, but he did know about the circumstances in Mexico. Well, it would be different because the circumstances of intellectual disability would affect the asylum application. I can certainly see a lawyer going to court and saying, hey, I'm going to go for the cancellation, but not for the asylum. I can see that even as a judgment, but not where there's an intellectual disability of the client. That makes the case so much stronger, given, again, the level of harm falling to people in the mental institutions in Mexico, which has been described by this court as abhorrent. Well, is there any indicator that he would be in a mental institution? He isn't in one now, and being intellectually deficient is not the same as being in a mental institution. I'm aware of that, Your Honor. We don't know what would happen. The problem here is he's just- Well, he hasn't been so far, correct, as far as the record shows? That's correct. My concern about him, Your Honor, is that he depends totally on his wife here to do anything, to do anything that requires paperwork, to do anything that requires- And do we know that if he is removed, that she would not go with him? I believe she's testified she would stay. If I'm correct, I think- OK, I didn't remember one way or the other. I think he's indicated that the children would go with him, but as a practical matter, I very much doubt it. It's too violent down there for the kids. I doubt very much that they would go. Did you want to save some rebuttal time? I better, yeah. Thank you. Thank you. Good morning, Your Honors. May it please the Court, Timothy Hayes on behalf of the Attorney General. Quickly to answer Judge Graber's testimony, she testified that she was unsure, and it's at page 341 of the record. Petitioner seeks review of two orders of the Board of Immigration Appeals. First, he seeks review of a board order denying   of a misdemeanor. Second, he seeks review of a board order of exceptional and extremely unusual hardship to his children. Because a hardship determination is not subject to judicial review, the Court should dismiss review of the Board's initial order. Second, petitioner seeks review of a board order denying a motion to reopen. Because the Board did not abuse its discretion in concluding that petition did not demonstrate an effective- Well, that's really the question. I think whether the new information about incompetence or potential incompetence changes the calculation with respect to the motion to reopen. So what would be different if he were found incompetent? What would have happened differently at the hearing? There's no easy way to answer that question, because the seminal decision is a matter of MAM from the Board. And it discusses possibilities of what could happen, but it's individualized to the particular case. The Board's conclusion that he essentially decided the competence question on the record without doing the reopening. And the alternative is to have a hearing and more information. And why isn't it at least an abuse of discretion not to have done that? I mean, here we have somebody who did testify largely, I don't know if quite coherently, but he seemed to have all kinds of problems which were taken as credibility problems and we now have an alternative explanation, which is that he has an intellectual disability. So when the Board decision says that there's nothing on the record that demonstrates that he had a problem, there certainly is, isn't there? Well, to answer your question, first, there is the issue of prejudice, which we discussed earlier. But I understand. Leave that aside for now. What I want to know is, because what the BIA did here was make a decision on the merits of the competency question. They did, Your Honor. They did. And I would agree that it could be read a variety of ways. But ultimately, what the Board did was look at the actual record of the hearing and look at his original counsel's response and look at They also have a psychologist who did IQ testing and they have, at least on a prima facie basis, no reason to disbelieve it. And it matches up pretty well with what happened at the hearing, which is that he had terrible problems remembering anything or understanding questions or everything that the administrative law judge said was wrong with his testimony could be explained, probably, by the findings of the psychologist. Well, I don't think, ultimately, his testimony was that disjointed. He did need prompting in order to, ultimately, did state his children's ages correctly. He did state his appointment correctly. He just needed prompting. That's not unusual. A lot of these cases, the witnesses are very nervous and understandably very nervous. So judges see this all the time. I think what the Board was getting at is, it went through two immigration judges. It went through an original attorney. It went through a DHS process when he was in detention in Tacoma. And he showed no indicia of incompetency. Incompetency doesn't mean that you're intelligent. It's related to whether you have a rational and functional understanding in the nature of the object of proceedings. Can you consult with this attorney? Did he have a reasonable opportunity to present evidence? All of that was here. There's no indication that this case would change whatsoever if this psychologist's report was made part of the original record and if the immigration judge was aware of it. The mom case, I think that's how you pronounce it, M-A-M. Yeah, yes. There's a variety of procedural safeguards which will be implemented if he is found to be incompetent. He would have available a family member. Now, that already happened. Yes, yes, sir. He would have legal representation. That already happened. The case will be continued for good cause shown. In this case, the record was left open for 30 days. And you would have the judge actively aiding the development of the record. And maybe that wasn't done completely. So what I want to get at is if he is found incompetent and he goes back to a hearing, what would happen differently at that hearing? Apart from a different attorney probably representative, nothing, Your Honor. There would be new evidence. I assume that the hearing, if it was reopened, he would be able to present the psychologist's report and put it to evidence. What end? To what end? He's already been found incompetent. So what would we then do? No, he hasn't been found incompetent. He has a second. In my hypothetical, he would have been found incompetent and then we proceed to a hearing on the merits. What would be different there? For example, if he didn't have an attorney and a credit representative would be appointed to represent him, the immigration judge would ask him basic questions, which is part of the benchmark to determine whether he understands where he is. Is he oriented to time and place? Does he understand the charges against him? Does he understand his options to avoid removal? Largely, that's the part of the credit representative to ensure that that is done. But the IJ also has a heightened duty in that case to make sure that is all done. Ultimately, I don't think anything would change in this case because the cancellation goes to hardship to the children. And undoubtedly, economic hardship's hardship, being torn away from your family. He would have no ability to help support the children. That would be a hardship. That would be an issue, Your Honor, but it has to go beyond that. Congress, and I believe it's only 10,000, they only authorize 10,000 grants of these applications a year. There are far more people that apply than are granted this. So the standard is exceptional and extremely unusual hardship. So it can't just be my father's going to have employment opportunities or I won't get to see him every day. As terrible as those things may be, it has to rise to something beyond that. And there is no indication here, evidence in the record before the board and the motions reopened, to suggest that a person, even with an IQ of 63, cannot find employment in Mexico. His family's farmers, he testified that he'll return to his family's farm. He's done construction all his life in the United States. He's done construction jobs where he's earned up to $31 an hour. So this individual has transferable skills that can be put into place in Mexico if necessary. The other claim, the other connective, which is that the intellectual disability would be relevant to the asylum and CAT claims. The BIA on the motion to reopen dismissed them as not. Adequately demonstrated, but the problem I gather is that there is, it sort of disregards this asserted connection, i.e., if his intellectual disability and or incompetence, which are different, were demonstrated. The CAT claim, for example, would have to take that into account. And the IJ, presumably, would have to help him in having that taken into account. Right, Your Honor. The problem, though, is this is being brought up in a motion to reopen where the removal order is already completed. So he still has to present some sort of evidence with that motion to suggest that that intellectual disability would affect his, would materially affect his ability to live in Mexico. But of course, isn't this somewhat circular? If he's incompetent and needs special assistance, then presumably he needs it at this level as well. And so first you have to, the incompetence question is logically prior to everything else, no? In other words, how can you decide the CAT claim or the asylum claim, even on a motion to reopen basis, until you decide the incompetence question? Well, you still have to establish that he was a prima facie eligibility for asylum, even if you assume that he's incompetent. He still has to bring forth evidence to show that if they reopen proceedings, the outcome may be different. Through counsel. I mean, he has counsel now. He's always had counsel, yes, Your Honor. So you're saying that in addition to the evidence of the psychologist about his intellectual deficit, he would have to show what is being discussed earlier by counsel. That is, that people with that problem are subject to torture or whatever it is. A heightened risk, Your Honor. Yes, ma'am. And the whole issue with that is the only evidence we have in the record is a Borman report, which does discuss Mexico country conditions, but it's not particularized to persons with intellectual disabilities. And the psychologist did posit a little bit on what may happen, but there's no indication that the psychologist is an expert, and the letter didn't say very much more than a paragraph. And unless Your Honors have any further questions. I don't believe that we do. Thank you. Thank you. Just a couple things, Your Honors. The letter from prior counsel talks about a process in Tacoma where DHS evaluated the client or looked at him or something. There's no report. There's nothing on that. There's no IQ test. It's perhaps speculation by counsel or self-defense by counsel. I've never seen such a thing. Also, I thought on motions to reopen, the board had to credit the evidence proffered. It certainly hasn't credited any of the evidence proffered. I thought that was part of the rule. I believe they abused their discretion by failing to do so. It's a hard question in this case. Let's assume that the BIA's merits decision as to the intellectual disability and reopening or the competency was an abuse of discretion, unless they're right about the fact that it wouldn't have made any difference anyway. So the question is, is that relevant? In other words, do we look at the question now of how it hooks up to any merits question? That's A. And B, if we do look at that, what do you have to demonstrate that anything that could have been done would have made a difference? I don't think the court even needs to look. I think there was an abuse of discretion and it should be remainded for a new case. And the case would be totally different if the court does have. Why? That's the question. It's the second part of that. What would be totally different or even different at all? It would be totally different, Your Honor. First, the judge would have to inquire as to his competence. I know, but let's assume that it was decided that he was incompetent. Then what would be totally different? Well, the merits of the cancellation case would change. The hardship. How exactly? The hardship to the petitioner would increase. The hardship to the petitioner is not a criteria. I am aware of that, but the hardship to the petitioner does affect his ability or the hardship to the children. And, you know, I use the word catastrophic and maybe the court thinks this is extreme, but I think it's catastrophic to be put into Mexico with no one to help you, without his wife there helping him, and with all the violence down there. By catastrophic, I mean the guy's not gonna be able to get going. He's not gonna be able to proceed with his life. And the Borman letter talks about that. It specifically addresses deportees from the United States to Mexico. It's a asylum claim, it's a CAT claim. What is it? I mean, unfortunately, we have, our immigration law is very limited and circumscribed. I understand, Your Honor. It's at least a deferral or removal claim. It might be a particular social... A deferral or removal, meaning a CAT claim? Yes, Your Honor, sorry. And a particular social group that I would place before the court if I had the opportunity, I would say an intellectually disabled, long-term resident of the United States. It's very narrow in focus. And it's, he's gonna be hurt as a result of that condition. Thank you, counsel. The case just argued is submitted and we appreciate the arguments of both of you. Our next argued case is de Jesus versus Primo.
judges: Graber, Berzon, Robreno